IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Christopher R. Murray,** | § § § | |
| Chapter 7 Trustee, | § § | |
| v. | § § | Civil Action No._____ |
| **Eco-Shell, Inc.,** | § § § | |
| Defendant. | § | |

### TRUSTEE'S COMPLAINT

Christopher R. Murray, the Chapter 7 Trustee for Q'Max America Inc. ("QAI"), and Anchor Drilling Fluids USA, LLC ("Anchor"), and for the Bankruptcy Estate of Q'Max America Inc., and Anchor Drilling Fluids USA, LLC, files this Original Complaint against Defendant Eco-Shell, Inc. ("Eco-Shell").[1]

### SUMMARY OF COMPLAINT

1.  This action seeks to avoid and recover fraudulent and preferential transfers made by Debtor QAI to Defendant Eco-Shell between May 24, 2018, and May 24, 2020 (two (2) years prior to the filing of the above-styled bankruptcy case). Debtor QAI made transfers of at least $74,360.00 during that time to, and for the benefit of, Defendant Eco-Shell by way of money transfers at times when Debtor QAI was insolvent. The transfers were paid pursuant to invoices issued, and for products provided, to Anchor and/or Q'Max Solutions Colombia.

---

[1] Citations to the Q'Max America, Inc. and Anchor Drilling Fluids USA, LLC's bankruptcy case, Case No. 20-60030 ("Bankruptcy Case") will be "Bankr. ECF No. 1."

2. The Trustee may avoid and recover these payments as fraudulent transfers pursuant to 11 U.S.C. §§ 547, 548, and 550 and Chapter 24 of the Texas Business and Commerce Code.

3. Debtor QAI had no legal obligation to make these transfers and received no benefit from making any of these transfers.

## JURISDICTION, VENUE & AND CONSTITUTIONAL AUTHORITY

4. The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1334.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

6. The Trustee consents to entry of a final judgment by this Court in this matter.

## PARTIES

7. Plaintiff is the duly appointed chapter 7 trustee for the Bankruptcy Estate of Debtor QAI. Plaintiff may be served with pleadings and process in this case through its undersigned counsel.

8. Defendant Eco-Shell, Inc., is a corporation organized under the laws of the State of California and may be served through its registered agent Charles R. Crain, 10695 Decker Avenue, Los Molinos, California 96055, or wherever it may be found.

## STATEMENT OF FACTS

9. Debtor QAI was an independent oilfield services company focused on providing drilling fluids and solids control services to national and independent oil companies. Debtor QAI was based in Houston, Texas.

10. Debtor QAI failed to make payments on debt as it became due in early 2018. Indeed, QAI was making late payments to vendors from February 2018 onward. These late payments became progressively later over time.

11. On May 24, 2020 ("Petition Date"), Debtor QAI filed a voluntary Chapter 7 petition for bankruptcy under title 11 of the Bankruptcy Code, commencing bankruptcy case number 2-60030 in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division. On the same day, Debtor Anchor filed a voluntary Chapter 7 petition commencing bankruptcy case number 20-60031 in the same court. Plaintiff was appointed as the chapter 7 trustee for both.

12. On May 27, 2020, the bankruptcies were ordered combined for joint administration.

13. Debtor QAI is wholly owned by its parent, Q'Max Solutions, Inc. ("QSI").

14. QSI owns Q'Max Solutions Colombia.

15. Defendant Eco-Shell sold and/or delivered products to Anchor and/or Q'Max Solutions Colombia.





16.     However, while Debtor QAI was struggling financially, QSI used Debtor QAI's accounts to pay for the products and services ordered from Defendant Eco-Shell that were delivered to either Anchor or Q'Max Solutions Colombia. In other words, QSI used Debtor QAI's accounts to pay for products and services that were of no benefit to Debtor QAI, and instead benefitted only Anchor and/or Q'Max Solutions Colombia.

17.     The payments for these products and services were significant. In total, Debtor QAI paid Defendant Eco-Shell at least $74,360.00 for the products delivered to, and used by, Anchor and Q'Max Solutions Colombia.

| Payment Date | Payment To | Payment Amount |
|---|---|---|
| 8/16/2018 | Eco-Shell | $14,125.00 |
| 8/30/2018 | Eco-Shell | $5,500.00 |
| 9/20/2018 | Eco-Shell | $8,625.00 |
| 1/4/2019 | Eco-Shell | $11,000.00 |
| 7/3/2019 | Eco-Shell | $14,300.00 |
| 8/22/2019 | Eco-Shell | $14,300.00 |

| | | |
|---|---|---|
| 10/31/2019 | Eco-Shell | $11,440.00 |
| 12/2/2019 | Eco-Shell | $5,720.00 |
| 12/6/2019 | Eco-Shell | $11,440.00 |
| 12/19/2019 | Eco-Shell | $17,160.00 |
| | **Total:** | **$74,360.00** |

18. Because Defendant Eco-Shell provided products Anchor and Q'Max Solutions Colombia, and not to Debtor QAI, all payments made by Debtor QAI to Defendant Eco-Shell were improper, as Debtor QAI did not benefit from any such products provided by Defendant Eco-Shell.

19. Despite knowing it did not benefit from the products or services provided by Defendant Eco-Shell to Anchor and Q'Max Solutions Colombia, and knowing it was not obligated to proffer any payments to Defendant Eco-Shell because (1) it did not receive or use any of the products delivered by Defendant Eco-Shell, and (2) no contract between Defendant Eco-Shell and Debtor QAI existed, Debtor QAI nonetheless transferred at least $74,360.00 in payments to Defendant Eco-Shell, which it knew would prevent this money from going to its true creditors.

### CAUSES OF ACTION

#### COUNT 1
#### FRAUDULENT TRANSFERS UNDER 11 U.S.C. §§ 548 AND 550

20. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

21. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) because Debtor QAI made these transfers with actual intent to hinder, delay, or defraud its creditors. Indeed, numerous badges of fraud exist.

22. First, Debtor QAI did not receive adequate consideration for the transfers. Debtor QAI did not engage Defendant Eco-Shell. Debtor QAI did not receive any products from

Defendant Eco-Shell. And Debtor QAI did not receive any other tangible benefit from the products provided by Defendant Eco-Shell. Yet Debtor QAI paid the bill.

23. In addition, Debtor QAI's financial condition was deteriorating before the transfers begun. As outlined above in paragraph 10, Debtor QAI was unable to make payments on debt as it became due as early as February 2018.

24. The transfers were also constructively fraudulent because Debtor QAI received less than equivalent value. Defendant Eco-Shell provided products and services to Anchor and Q'Max Solutions Colombia while Debtor QAI paid the bill. As a result, Debtor QAI could not have received equivalent value for the transfer. Only Anchor and Q'Max Solutions Colombia could have.

25. The Avoidable Transfers made before the Petition Date are avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(B) because:

   A. Debtor QAI made these transfers and received less than a reasonably equivalent value in exchange for such transfer or obligations, and in fact, received no value;

   B. Debtor QAI was insolvent on the date each such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation; and

   C. Debtor QAI was not personally liable for the debts satisfied by the Avoidable Transfers.

26. Under 11 U.S.C. § 550(a), the Trustee may recover the value of the Avoidable Transfers from "the initial transferee of such transfer of the entity for whose benefit such transfer was made." Defendant Eco-Shell was the initial transferee of the Avoidable Transfers. In the alternative, Defendant Eco-Shell as the entity for whose benefit such transfers were made. Therefore, the Trustee is entitled to avoid and recover the value of the Avoidable Transfers from Defendant Eco-Shell.

## COUNT 2
## TEXAS UNIFORM FRAUDULENT TRANSFERS ACT

27. Plaintiff realleges and incorporates all allegations of fact contained in the preceding paragraphs as if fully set forth herein.

28. The Avoidable Transfers are avoidable as fraudulent transfers under TEX. BUS. & COM. CODE ANN. § 24.001, *et. seq.* ("Texas Uniform Fraudulent Transfer Act" or "TUFTA"), which the Trustee incorporates pursuant to 11 U.S.C. § 544(b)(1).

29. One or more creditors exist whose claims arose before some of the Avoidable Transfers for whom the Trustee can act.

30. Debtor QAI made the Avoidable Transfers for the benefit of Anchor, Q'Max Solutions Colombia, and/or Defendant Eco-Shell with the actual intent to hinder, delay, or defraud one or more of its true creditors. These transfers exhibit badges of fraud. The Trustee incorporates by reference the facts set forth in paragraphs 13-19, *supra*, setting forth the facts supporting a finding that Debtor QAI had actual intent to hinder, delay, or defraud. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.005(a)(1), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Eco-Shell.

31. Debtor QAI made the Avoidable Transfers to Defendant Eco-Shell without receiving reasonably equivalent value in exchange for the Transfers. Additionally, when Debtor QAI made the Avoidable Transfers for the benefit of Defendant Eco-Shell, it (1) was engaged or was about to engage in a business or transaction for which the remaining assets of Debtor QAI were unreasonably small in relation to the business or transaction, or (2) intended to incur, or believed or reasonably should have believed that Debtor QAI would incur, debts beyond its ability to pay as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS.

& COM. CODE ANN. § 24.005(a)(2), and the Trustee may avoid and recover the Avoidable Transfers from Defendant Eco-Shell.

32. Debtor QAI made the Avoidable Transfers to the transferees for the benefit of Defendant Eco-Shell and CPI (1) without receiving reasonably equivalent value in exchange for the Avoidable Transfers, and (2) Debtor QAI either was insolvent when it made the Avoidable Transfers, or it became insolvent, partially as a result of the Avoidable Transfers. At the time of the Avoidable Transfers, (1) Debtor QAI's debts exceeded the fair valuation of all its assets, and (2) Debtor QAI was generally not paying its debts as they became due. Accordingly, the Avoidable Transfers are fraudulent under TEX. BUS. & COM. CODE ANN. § 24.006(a), and the Trustee may avoid and recover the Avoidable Transfers.

33. Because the Avoidable Transfers were fraudulent under TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(1) and (2) and 24.006(a), the Trustee may avoid the Avoidable Transfers to Defendant Eco-Shell under TEX. BUS. & COM. CODE ANN. § 24.008. Pursuant to 11 U.S.C. § 550(a) and TEX. BUS. & COM. CODE ANN. § 24.008, the Trustee may recover from Defendant Eco-Shell the value of the Avoidable Transfers.

## CONSTRUCTIVE TRUST

34. Once an entity becomes insolvent and can no longer continue normal business operations, its assets become a trust fund for the benefit of all creditors. *Tigrett v. Pointer*, 580 S.W.2d 375, 383 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). Any assets that are transferred to or for the benefit of an officer, director, or owner are held in a constructive trust. *Southwest Livestock & Trading Co. v. Dooley*, 884 S.W.2d 443, 444 (Tex. App.—San Antonio 1994, writ denied); *Donovan v. Rankin*, 768 S.W.2d 443, 444 (Tex. App.—Houston [1st Dist.] 1989, writ denied). The Trustee requests that a constructive trust be imposed against all Avoidable Transfers

made to Defendant Eco-Shell.

## TURNOVER OF PAYMENTS UNDER 11 U.S.C. § 542

35. All of the Avoidable Transfers made to Defendant Eco-Shell are property of the Bankruptcy Estate. The Avoidable Transfers are in a known amount. The Trustee seeks a judgment requiring the turnover of all Avoidable Transfers and all proceeds derived therefrom pursuant to 11 U.S.C. § 542.

## ATTORNEYS' FEES

36. The Trustee requests an award of his reasonable attorneys' fees and costs pursuant to TEX. BUS. & COM. CODE ANN. § 24.013 and all other applicable law.

## PRE- AND POST-JUDGMENT INTEREST

37. The Trustee seeks pre- and post-judgment interest on his recovery at the maximum amount allowable by law.

## PRAYER

38. Accordingly, the Trustee requests the entry of a judgment against Defendant Eco-Shell, Inc., consistent with the above-stated causes of action, including all actual damages, turnover, the imposition of a constructive trust, attorneys' fees and costs, pre- and post- judgment interest, and all such other and further relief to which the Trustee may be justly entitled.

Dated: May 20, 2022                    Respectfully submitted

                                                  MCDOWELL HETHERINGTON LLP

                                                  By: */s/Nicholas R. Lawson*
                                                  Nicholas R. Lawson
                                                  Texas Bar No. 24083367
                                                  Avi Moshenberg
                                                  Texas Bar No. 24083532
                                                  Matthew Caldwell

Texas Bar No. 24107722
McDowell Hetherington LLP
1001 Fannin Street, Suite 2700
Houston, TX 77002
P: 713-337-5580
F: 713-337-8850
E: Nick.Lawson@mhllp.com
   Avi.Moshenberg@mhllp.com
   Matthew.Caldwell@mhllp.com

*COUNSEL FOR CHRISTOPHER R. MURRAY, CHAPTER 7 TRUSTEE*